Good morning, Your Honors. May it please the Court, Nicholas Lynn and Catherine Case O'Howard, pro bono counsel for the appellant, Mr. Hypolite. If it's permissible by this Court, I'd like to reserve four minutes for rebuttal, which my colleague, Ms. Case O'Howard, will be handling. Very well. I'd like to make a couple of quick points on the waiver of sovereign immunity  to defendants, and two, is fairly straightforward in terms of the sovereign immunity defense. Defendants here chose to proceed after receiving the amended complaint by, one, filing a motion to dismiss, two, answering the complaint, three, filing for a motion for judgment on the pleadings, four, conducting discovery, and five, filing for a motion for summary judgment over the course of almost four years before belatedly asserting their sovereign immunity defense. Now, does that conduct in extensive proceedings on the merit constitute waiver? And we think that the case law in this circuit is clear. Defendants will be held to that choice to litigate on the merits. That is the only evidence required by this Court to find that their conduct was tactical and to find waiver. Well, counsel, help us sort out the cases. Obviously, there's a dividing line. Some cases say no waiver. Some say yes waiver. What is the dividing line? Sure. So I think both Johnson and Ingrie Bleemeister set the line. Those are both cases in which motions for summary judgment were filed, but no decision had been issued in the motion for summary judgment. And that's exactly the same posture here. Motions for summary judgment were filed. They were pending for almost a year, I believe. And then the magistrate judge asked for additional briefing in which the defendants finally asserted their summary, their sovereign immunity defense. So I think on those facts, it's fairly clear compared to Johnson and Hill or, pardon me, Johnson and Ingrie Bleemeister that. Right. But the wrinkle in this case is that the judge asked for it. So how should we take that? Do you think a magistrate judge has the power to raise the issue sua sponte? Well, the case law says the judge may raise it sua sponte, but not as an assertion of the defense on behalf of the defendant. So the judge raises it sua sponte, and the State responds and says, oh, yeah, by the way, we are asserting. Doesn't that make it a different case? I don't think so, because the magistrate judge and then the district court didn't consider the issue of waiver, which Mr. Hippolite raised clearly, the argument that they had waived. And I think that in and of itself can be one of the errors in this case. And I think that dividing line is does not have to be so clear as to whether or not the magistrate judge raised the issue sua sponte or not. There have been cases where the court raises it sua sponte and finds waiver, and there are cases where they raise it sua sponte and asks counsel to brief it, and the counsel briefs it and asserts it. And I think it's a fact-dependent inquiry as to how far along are they in the proceedings and how many years and how much time has passed before the defense is asserted. One of the things that they often reference in the cases is tactical advantage. And it would seem that the posture here is not one where you could accuse the State of tactical advantage because of, as Judge Thomas points out, the judge raises the issue. Would you comment on whether you think that where does that factor fit into this case? I think Johnson is fairly clear that the plaintiff doesn't have to define or speculate on what tactical advantage is gained. It's the conduct is deemed tactical. Essentially, the proof is in the pudding. Once they have litigated up until a certain point, then that conduct is tactical. Of course, they've gotten the leanings of the magistrate judge. Now, the magistrate judge says, well, I'd like to hear on the sovereign immunity issue. And then the defendants say, oh, we might be losing on the rest of our issues. That's why we need to start briefing the sovereign immunity question. And I think this Court recognized that in the Hill case. And when it said when the defense is raised late in the case, quote, the record may be inadequate to permit informed appellate review and the plaintiff may have difficulty obtaining evidence necessary to oppose the motion, end quote. And I think what this Court said in Johnson, deeming the conduct tactical is overcomes that obstacle, and that's why waivers should be found in this case. And why was there an advantage here? What was the advantage? There are a bunch that I can speculate on. I don't know exactly. No, here, in this case. In this case, I mean, they get the benefit of all the judgment on the pleadings, hearing what the Court's kind of leanings are, so to speak. And then here, after they filed the motion for summary judgment, it's pending. And I think it's a tactical advantage just to have the magistrate judge say, you should brief this issue. I want to hear about this issue. And the delay in itself is also a tactical advantage. They've worn our client down. He's, you know, the case is pending for four or five years, and he's in prison. And I think that is sufficient to show the tactical advantage. All right. Thank you, Counselor. You're down to about four and a half minutes. Okay. I just want to make one quick point on the sovereign immunity question, on the individual capacity damages question. And it starts, I think, with the statute, RLUIPA itself, as to how we should construe it in terms of whether damages are available. And Section 5 of RLUIPA contains the rules of construction. And I want to highlight Subpart G, which provides for broad construction of RLUIPA. It says, quote, This Act shall be construed in favor of a broad protection of religious exercise to the maximum extent permitted by the terms of this Act and the Constitution. And I think it's in that context that the damages should be considered. I'd like to reserve the rest of my time. You certainly may. Your side will. Thank you very much. We'll hear from the government. Good morning, Your Honors. May it please the Court. Jose Zalabanza-Peda, Attorney General's Office for the Defendants. I wanted to start by addressing the question that Judge Rose-Candlin had, and that is, what's the dividing line on these waiver issues? First of all, I think it's important to keep in mind that this is a co-equal sovereign, so, therefore, this Court should be reluctant to infer any type of waiver. The case, though, is sort of difficult to gauge in terms of what types of situations the Court should find waiver. I think the key point, like Judge Thomas said, the wrinkle in this case is that the district court raised the issue of civil esponte, and that's important for a couple of different reasons. First, I'd submit to the Court that the district court implicitly found that there was no tactical advantage. If anybody's in a particularly good position to figure out if the conduct of the defendant was inappropriate or somehow trying to game the system, it'd be the district court. Secondly, one of the primary purposes of the waiver doctrine is to basically to save judicial resources. There would be no saving judicial resources here if the district court had to deal with this case again. We're talking about allegations of violations going back in 2001 and 2005, and, therefore, I would submit to the Court that there was no waiver here. But doesn't that cut the other way in this case, because the waste of judicial resources was the fact that the State litigated this for four years without raising immunity? The other second – that reminds me of my second point. Thank you, Judge Thomas. The other point is that at the time when – Relief By is obviously a new statute. When this litigation first started, it wasn't the sort of thing where it was clearly set out, the constitutionality of it. I think it was in 2010 when this Court first held in Holly that monetary damages are not available against prison officials in their official capacity, and it wasn't until earlier this year that it held in their personal capacity, so prison officials cannot be held liable. True, but in all those cases, the State raised that issue right away. This – this really – this goes back to – this goes back to the point that Plaintiff was trying to make about whether there was any type of tactical advantage in that Frankly, it was through inadvertence that this issue wasn't raised at some point, and it – and, therefore, this Court should assess whether it's – that the district court was somehow abusing its discretion in implicitly raising this issue, finding no tactical advantage, and, therefore, deciding to go ahead and address the issue of whether such damages are even available. I can go ahead and address the issue of the Section 5 argument, if this Court wants, but basically, on simple point of statutory construction, I submit to the Court that this Court should decline the invitation to try to address whether RULAPA is valid  Congress made clear in the statutory language that it didn't want to use its Section 5 powers, and given the whole history of the Religious Freedom Restoration Act and the RULUPA and the back and forth with the Supreme Court with City of Bernie v. Flores, it was apparent why Congress was trying to do that. Congress was concerned about limitations on its power that the Supreme Court had set out in City of Bernie v. Flores, and those concerns would come to light again if this Court tried to address the question of whether Section 5 is a valid source for RULUPA. Counsel, is this case potentially moot? I understand the following war soldier that the prison system has complied. That is correct, Your Honor. The regulation at issue has been amended so that inmates are allowed to keep their hair at any length. That was the case. Well, what about Mr. Hippolyte? Is he advantaged by that? Is he in compliance now? He – well, actually, I checked last week, and he's no longer in state prison. And in terms of the disciplinary reports that he did get at the time when the regulation was in effect, those were expunged. So those were moot at least as of 2006, I believe. So here we're basically here just on Mr. Hippolyte's request for $100,000 from each defendant plus punitive damages for a regulation that's no longer being enforced and for which he never suffered any time in disciplinary confinement. Right. The damage claim is not moot, but – and that's what the argument is here today, right? That's correct, Your Honor. If there's any further questions. The damage claim is still alive, yes. Pardon? The damage claim is still alive.  Yes. Yes. Anything further? That's all I have, Your Honor. Thank you, counsel. For rebuttal, I understand co-counsel will be rebutting. Thank you, Your Honors. Just briefly – Counsel, would you please identify yourself? Of course. Catherine Caso Howard for Mr. Hippolyte. Very briefly, on the waiver issue, these are sophisticated attorneys whose job it is to represent the State, and that is the only job that they have, and they routinely assert sovereign immunity in cases on behalf of the California Department of Corrections. And it is somewhat incredible to think that they inadvertently didn't assert this defense. The record shows that their conduct over the course of four and a half years was to extensively litigate this on the merits. They pushed their qualified immunity arguments, never once raising a sovereign immunity argument. And to now foreclose Mr. Hippolyte from a damages claim based on this conduct, to be able to assert it now, because he can't present an affirmative tactical advantage where he was never allowed the opportunity to develop that evidence, would just be an abuse of the State's power to extensively litigate this. So how would you develop a tactical advantage evidence? Well, that's a great question, Your Honor. Obviously, a lot of that would go to work product and an attorney-client relationship. And so I think that that is part of the reason why, in this Court, Johnson recognized that you are deemed, it's deemed tactical, because it is a question of how you would prove that. I mean, the question, really, we have to evaluate on the record, don't we? Yes. Because we can't get at any of the, we're not going to find anything in the files. The Court's not going to let you get into their files. Exactly. To say, you know, we're just, we're delaying for tactical advantage. So what more discovery do you need? I'm sorry? What, I mean, what other evidence would you need in the case? Isn't the record the record? We think none. We think this is the textbook case of waiver of sovereign immunity through litigation, through conduct. And if the Court doesn't have any other. Counsel, do you agree with opposing counsel that your client is no longer incarcerated? Yes. He was removed and, but because the damages claims are live, we didn't think that that moved the appeal. Right. Everything else is moved, right? Yes. Yeah. He conceded that at the district court level, but the injunctive and declaratory relief were moved. Or moved now. Yes. As a result. Yes. Very well. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown